**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Harry H. NANCE, et al.,
Defendant-Appellant.**

**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Leon STELLY, Defendant-Appellant.**

**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Taybren LEE, Defendant-Appellant.**

**Nos. 81–1183 to 81–1185.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 7, 1981.

Decided Jan. 7, 1982.
Certiorari Denied April 5, 1982.
See 102 S.Ct. 1776.

Barrett S. Litt, Los Angeles, Cal., for Nance.

Arthur Mabry, Los Angeles, Cal., for Stelly.

Joseph F. Walsh, Los Angeles, Cal., for Lee.

Paul Rochmes, Asst. U. S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Before SNEED, KENNEDY and SKOPIL, Circuit Judges.

KENNEDY, Circuit Judge:

Appellant Harry H. Nance was convicted of two counts and appellants Leon Stelly and Taybren Lee were convicted of one count of theft from interstate shipments, in violation of 18 U.S.C. § 659 (1976). The three were tried together and contend here as the principal ground of appeal that dismissal of their indictments is required by the Government's failure to bring them to trial within the seventy day time limit imposed by the Speedy Trial Act, 18 U.S.C. § 3161 *et seq.* (1976 & Supp. III 1979).

The Speedy Trial Act requires the dismissal of the indictment against any defendant who is not brought to trial within seventy days. 18 U.S.C. §§ 3161(c)(1), 3162(a)(2) (Supp. III 1979). The Act contains narrow, automatic exclusions from the strict time limits for necessary pretrial proceedings, treatment of a defendant, trials on other charges, interlocutory appeals, and unavailability of defendants or essential witnesses, among other reasons. 18 U.S.C. § 3161(h)(1)–(7) (1976 & Supp. III 1979). In addition, in response to the concern that courts need discretion to respond to characteristics of individual cases similar to those granted automatic exclusion,[1] the Act permits the trial court to exclude continuances granted when the "ends of justice" outweigh the best interest of the public and defendant in a speedy trial. 18 U.S.C. § 3161(h)(8)(A) (1976). These findings must be set forth in the record.

Realizing that broad discretion would undermine the mandatory time limits of the Act, Congress intended that this provision be "rarely used"[2] and enumerated four factors to be considered by the judge in granting an ends of justice continuance, including "[w]hether the failure to grant such a continuance ... would unreasonably deny the defendant or the Government continuity of counsel." 18 U.S.C. § 3161(h)(8)(B)(iv) (Supp. III 1979).[3]

The Congress, at the instance of the House of Representatives, further strengthened the Act to prohibit granting an ends of justice continuance "because of general congestion of the court's calendar,"

---

1. *See* S.Rep.No.1021, 93d Cong., 2d Sess. 21 (1974).

2. S.Rep.No.1021, 93d Cong., 2d Sess. 41 (1974).

3. The other three factors were part of the text of the 1974 Act: whether a miscarriage of justice would likely result if the continuance were not granted, whether the nature of the case is such that adequate preparation cannot be expected within the statutory time limits, and whether the delay is caused by the complexity of the case before the grand jury. 18 U.S.C. § 3161(h)(8)(B)(i)–(iii) (1976). The fourth factor, continuity of counsel, was implicit in the first factor in the 1974 Act, *see* S.Rep.No.1021, 93d Cong., 2d Sess. 40 (1974), and was made a part of the text by the 1979 Amendments, 18 U.S.C. § 3161(h)(8)(B)(iv) (Supp. III 1979).

18 U.S.C. § 3161(h)(8)(C) (1976).[4] The prohibition recognizes that the entire structure of the Speedy Trial Act is intended to eliminate delays caused by crowded dockets. Continuances should not be granted lightly or as a matter of course. The interests of justice exception should not be invoked without findings to support it.[5]

■ As is generally the case, on appellate review of a trial court ruling that the ends of justice exception is grounds for a continuance, we do not disturb factual findings underlying the district court's determination unless they are clearly erroneous, but questions of the correct legal standard are for our de novo review. *United States v. Fielding*, 645 F.2d 719, 721–22 (9th Cir. 1981).

The case presents the issue whether delays occasioned by defense counsels' scheduling conflicts and previously calendared cases are excludable under the Speedy Trial Act as an "ends of justice" continuance, or rather must be deemed unexcused delays caused by "general court congestion." In part because the strict mandatory dismissal provisions of the Act have come into effect only recently,[6] the issue has not yet been addressed in this circuit. After computing certain limited delays directly caused by the need to preserve continuity of counsel, comprised in part of unexpected and excess trial days consumed by an intervening trial, we find that defendants were brought to trial within seventy days, and we affirm the convictions.

On September 3, 1980, Nance, Stelly, and Lee were arraigned before a magistrate. We refer to the consolidated cases as the *Nance* trial. An indictment issued on September 12, 1980. Indictment or arraignment, whichever is later, commences the Speedy Trial Act's seventy day mandatory trial period. Here, the September 12 indictment started the time.

On September 22, the defendants appeared before the Honorable Terry J. Hatter, Jr. and entered a plea of not guilty. Judge Hatter set the *Nance* trial for November 4, 1980, which would have been on the 53rd day of the seventy day period mandated by the Act.

On November 4, 1980, the court and the Government were prepared for trial, but the attorney for the defendant Lee was unavailable because of a death in the family. The trial was continued until January 6, 1981, which was the first date counsel could be present. In continuing the trial to January 6, the district court filed findings of fact and an order, excluding the entire period of the continuance under section 3161(h)(8)(A), on the specific ground that the delay was necessary to ensure continuity of counsel for the defense and the Government, 18 U.S.C. § 3161(h)(8)(B)(iv) (Supp. III 1979). The appellants do not contest this finding or the exclusion of the entire first continuance period from the seventy day calculation.

The dispute here centers on additional delays in bringing the matter to trial. The parties were not able to proceed on January 6. Lee's attorney was unavailable because of the trial of a custody defendant in another case. Stelly's attorney requested a one day continuance until January 7. When these difficulties surfaced, the district court made two rulings, one resetting the *Nance* trial for January 13, and the other setting a criminal trial in an unrelated matter, called *Lawton*, to commence on January 6 in place of *Nance*.

4. H.R.Rep.No.1508, 93d Cong., 2d Sess. 22, *reprinted in* [1974] U.S.Code Cong. & Ad.News 7401, 7415 [hereinafter "House Report"].

5. Ends of justice continuances under section 3161(h)(8) accounted for 22.2 percent of all the incidences of excludable delay granted during the year ended June 30, 1981, in all the districts. Administrative Office of the United States Courts, Report for the Year Ended June 30, 1981, on the Implementation of Title I of the Speedy Trial Act of 1974, 122–23 (October 23, 1981). In the Central District of California, though, during the same period, 55 percent of the periods of excludable delay was due to section 3161(h)(8) ends of justice continuances. *Id.* at 299.

6. The mandatory dismissal sanction applies to all cases commenced by arrest, and all indictments filed, on or after July 1, 1980. 18 U.S.C. § 3163(c) (Supp. III 1979).

The *Lawton* trial developed certain problems of its own. The trial judge was unavailable on January 6 and 7 for medical reasons, so *Lawton* did not begin until January 8. *Lawton* apparently had been estimated to require four trial days, but in fact it took six, ending on Friday, January 16. This in turn meant that the earliest the *Nance* trial could have begun was on Tuesday, January 20.[7]

The court met with counsel in the *Nance* case on January 13, the date trial was to commence. Now it was apparent the *Lawton* case was a problem, and there were additional obstacles to rescheduling *Nance.* As mentioned, *Lawton* had been estimated to end by January 13, but now the earliest date for *Nance* was January 20. The trial judge was scheduled to attend a meeting of judges of the circuit on January 22 and 23. In addition, as of January 13, three custody cases were set for trial in the judge's court for the week of January 27 and were expected to last into the first week of February. Because of these scheduling obligations, Judge Hatter continued the *Nance* trial until February 10, 1981, and assigned the case to visiting Judge Russell E. Smith as the first trial on his calendar. The defendants moved on January 13 to dismiss for failure to comply with the Speedy Trial Act. The court rejected the motion and made findings and an order excluding the entire continuance, from January 6 to the scheduled date of February 10, to meet the ends of justice as provided in section 3161(h)(8).

The *Nance* trial actually began earlier than expected, on February 4. The appellants again moved to dismiss for failure to comply with the Speedy Trial Act, and the court denied the motion. The appellants contend here, as they did below, that none of the twenty-nine days between January 6 and February 4 can be excluded and that they were brought to trial on the 82nd day after the indictment, in violation of the Act.[8] We agree with appellants that certain portions of the twenty-nine day period were excluded improperly, but we find that unanticipated delays in commencing and concluding the *Lawton* trial stemmed from the continuance request and are properly excluded. By a computation set forth below, we find that the appellants were tried at least within sixty-nine days of the indictment so that there is no Speedy Trial Act violation.

Analyzing the period from January 6, when counsel moved for the continuance, to January 20, the first day after *Lawton* that *Nance* could have been tried, we rule that the days January 6 through January 12 are excluded from the time limits as being required for the continuance, and the days January 13 through January 19 are excluded from the limits as continuance time because they relate to illness and unforeseeable delays in the conclusion of *Lawton.*

While the record is not entirely clear on the point,[9] it appeared that defense counsel conflicts in the week of January 6 would have prevented the *Nance* trial from beginning until January 13, without reference to

---

7. The court was closed Saturday and Sunday, and by local rule Monday was reserved for sentencing and law and motion matters, Rule 3.2, Local Rules of the District Court for the Central District of California (1981).

8. Appellant Nance contends that the entire twenty-nine day period cannot be excluded under the Act, and that defendants were brought to trial within eighty-two days of indictment. Appellant Lee also challenges the entire second exclusion and eighty-two day delay of trial, although at an earlier point in his brief he seems to have conceded that the four day delay from January 6 to January 9, 1981, was due to scheduling conflicts of defense counsel. Appellant Stelly contends simply that "the case here-

in shows an overwhelming violation of the Speedy Trial Act from whatever point one begins the countdown."

9. At an appearance before Judge Hatter on January 8, 1981, Lee's attorney advised the court that he still was engaged in another trial, but that it "should conclude today." Apparently Lee's attorney still was unavailable on Friday, January 9, because Judge Hatter's "Findings of Fact and Order Re: Excludable Time" states that the attorney was unavailable "through" January 9, 1981. In any event, based upon the record this factual finding of counsel's unavailability is not clearly erroneous.

any intervening case.[10] Appellants advance no grounds to challenge the continuance granted from January 6 to January 13. Appellants cannot complain of the extension any more than the extension from November 4 to January 6 caused by defense counsel's unavailability. *See United States v. Edwards,* 627 F.2d 460 (D.C.Cir.1980), *cert. denied,* 449 U.S. 872, 101 S.Ct. 211, 66 L.Ed.2d 92 (1981); *United States v. Howard,* 590 F.2d 564, 568–69 (4th Cir.), *cert. denied,* 440 U.S. 976, 99 S.Ct. 1547, 59 L.Ed.2d 795 (1979).

■ We conclude, moreover, that the *Lawton* trial was properly scheduled as an intervening trial. At the time of scheduling, it appeared that *Lawton* would end in sufficient time for *Nance* to begin within the period provided by the Act and at a time when all counsel could be present. The conclusion of the *Lawton* trial was delayed, however, by four days beyond the original estimate, two days resulting from a late start due to medical reasons [11] and two days because the trial ended in six court days instead of the expected four. The trial having concluded on a Friday, three additional days also were lost, as explained above.

The scheduling of *Lawton* was entirely proper. The court desired to take full advantage of judicial resources and to avoid leaving the courtroom empty while *Nance* defense counsel were occupied elsewhere. This is consistent with the speedy trial interests of the public and the defendants. The court was attempting to manage its own docket to achieve maximum efficiency.

■ The trial judge is responsible, however, for all assigned criminal cases and for protecting the speedy trial rights of all defendants. Thus, even if it is reasonable to schedule an intervening trial, the trial court must keep track of the Act's time limits on the suspended case. If the trial court has awaiting trial only cases which, if scheduled as superseding cases, will cause a suspended case to be tried later than the time provided in the Speedy Trial Act, it must provide for scheduling of the postponed trial within the time mandated by the Act, by transferring the case to another judge, by requesting assignment of a visiting judge, or simply by not scheduling the intervening trial.

■ An intervening trial thus is properly scheduled if it is a trial set to utilize court resources that would otherwise be unused by reason of the continuance, and if the time estimated for such trial will not extend the commencement of the suspended trial beyond the seventy day limit, calculated by excluding the time necessary for continuance but not excluding the time reasonably estimated for the intervening trial. If the scheduling is reasonable, we must permit the court to exclude any additional delay caused by the unexpected extension of the superseding trial, as this is not within the control or planning of the trial judge, and is itself an inherent risk attributable to the original problem presented to the court when it suspended the first trial to insure continuity of counsel. This specific delay is not an extension for general congestion of the courts, and it is properly excluded as part of the continuance for the ends of justice under 18 U.S.C. § 3161(h)(8)(B)(iv) (Supp. III 1979).[12] Excludable time neces-

---

**10.** Monday, January 12, 1981, was reserved for law and motions calendar, *see* note 7 *supra.*

**11.** The trial court properly excluded the two day delay caused by court illness. *See United States v. Corley,* 548 F.2d 1043 (D.C.Cir.1976). Illness of the trial judge was intended to be considered in determining whether failure to grant a continuance would make continuation of the proceedings impossible, 18 U.S.C. § 3161(h)(8)(B)(i) (1976), which is one of the enumerated justifications for a section 3161(h)(8)(A) ends of justice continuance. *See* S.Rep.No.1021, 93d Cong., 2d Sess. 40 (1974).

This two day delay accounts for the late start of the *Lawton* trial and thus excuses two of the four days that *Lawton* consumed past the original continuance to January 13.

**12.** One commentator has suggested that an ends of justice exclusion would seem appropriate "when a judge becomes bogged down in a lengthy trial on another matter," because given the difficulty in forecasting the exact length of trials, such temporary conflicts in court scheduling are often unavoidable. It would be inefficient and unfair to the litigants in the case on trial to require that a recess be held

sary to insure continuity of counsel is measured by the days counsel requires for the continuance, plus any excess time consumed by an intervening, properly scheduled trial.[13]

As to the balance of the time from January 20 to February 4, we do not consider whether the two day period during which the judge was required to attend the Judicial Conference, January 22–23, was excluded properly in order to ensure the court's presence.

■ We have no hesitation, however, in saying that exclusion of the remainder of the period by the trial judge was improper and based on impermissible considerations. The trial judge attempted to exclude the period from January 27 to trial on the ground that three custody cases were set for trial before the court during that time.

We agree with defendants that this excuse constitutes "general congestion" of the court's calendar which, under section 3161(h)(8)(C), is an impermissible factor upon which to base an ends of justice continuance. These cases were not scheduled to take advantage of resources left idle by defense counsel's requested continuance. The matters were scheduled in advance and the trial judge, anticipating the scheduling conflict, should have sought earlier compliance with the Central District's Speedy Trial Plan [14] by seeking reassignment to another judge.[15] This is the kind of general congestion that courts have rejected as an excuse for delay under the Speedy Trial Act. *See United States v. Buffalo Amusement Corp.*, 600 F.2d 368, 376 (2d Cir. 1979); *United States v. Didier*, 542 F.2d 1182, 1188 (2d Cir. 1976); *United States v. Drummond*, 511 F.2d 1049, 1054 (2d Cir.), *cert. denied*,

to permit trial of criminal cases approaching the statutory time limits.

Frase, *The Speedy Trial Act of 1974*, 42 U.Chi. L.Rev. 667, 702 (1976). The author prefers permitting an ends of justice continuance over reassignment to another judge:

If the scheduling conflict could not have been avoided, then the situation is similar to a case in which the original judge becomes "ill or unable to continue." In both cases, it is more efficient to tolerate a slight delay than to require reassignment (which may cause some delay anyway); large numbers of such reassignments would also seriously impair the effectiveness of the individual calendar system.

*Id.; see* United States District Court, Northern District of Illinois, *Third Plan Adopted under the Provisions of the Speedy Trial Act of 1974 as Amended* 32 (1980). The author notes that the prohibition against granting continuances based on general congestion should not bar exclusions based on such temporary scheduling conflicts. *Id.* at 702 n.171.

13. The expected duration of the *Lawton* trial overlapped the continuance properly granted for defense counsel conflicts, January 6 to January 13, so we need not address whether, if the intervening trial is properly scheduled, the time reasonably estimated for its completion is itself excludable as part of the ends of justice continuance. We also do not address whether there might be an exception to the rule allowing intervening trials to be scheduled only if they are expected to conclude before the running of the time on the suspended case, when the intervening trial itself must be scheduled in order to comply with the Speedy Trial Act time limits.

14. It shall be the policy of the court to try all cases on the date set for trial. Any case not reached for trial by the judge to whom it is assigned within five court days after its setting . . . shall be reassigned to another of the judges of the court by agreement and mutual arrangement. Any case not transferred by such agreement and mutual arrangement will be referred to the Executive Committee for reassignment to the first available judge.

Any three members of the Executive Committee may act on the transfer taking into account such factors as will provide a fair distribution of the burdens of the court among all of its judges. No judge may refuse an assignment of a transfer to accomplish speedy trial except on the ground that it will prevent action on another criminal case immediately pending for trial.

United States District Court, Central District of California, General Order No. 209, *Plan for Achieving Prompt Disposition of Criminal Cases*, § 4(g) (1980) [hereinafter "Speedy Trial Plan"].

15. On January 13, when it became clear that trial would have to be postponed until after the trial judge's conference, the Government in fact referred the trial court to the Speedy Trial Plan and suggested that the case be sent back to the committee for reassignment to another judge. The judge doubted whether the case could have been assigned within a week or two under such a request. The trial court should have anticipated the conflict earlier and should have sought a prompt reassignment.

423 U.S. 844, 96 S.Ct. 81, 46 L.Ed.2d 65 (1975) ("[b]oth the United States Attorney and the judge to whom a [ ]trial is assigned should closely monitor its progress"). As now Justice Blackmun noted while on the Eighth Circuit:

> Where a multiple-judge court uses the individual calendar system, all judges must share responsibility for the prompt disposition of criminal cases, must employ a team approach to those cases, and, when necessary, must reassign them in order that they may be tried according to the commands of the Sixth Amendment and Criminal Rules 48(b) and 50. If a judge is otherwise long committed in another case or is delayed in getting to the criminal cases on his calendar by reason of illness, personal misfortune or press of other business, this obviously does not serve to toll the enforcement of the right of a defendant awaiting trial on that judge's criminal calendar.

*Hodges v. United States*, 408 F.2d 543, 551–52 (8th Cir. 1969). The Speedy Trial Plan adopted by the judges of the United States District Court for the Central District of California enforces this responsibility. It admonishes that individual calendars should be managed so that every criminal case set for trial will be reached during the week of original setting,[16] and provides for the reassignment of any case not reached for trial by the judge to whom it is assigned.[17]

In summary, then, of the period from January 6 to February 4, 1981,[18] the trial judge's exclusion of fourteen days (January 6 to January 19) was proper. Even if the entire balance is deemed non-excludable, when added to the initial fifty-three day unexcludable period, the unexcused delay totals sixty-eight days. Thus, defendants were brought to trial within the seventy day time limit of the Speedy Trial Act and dismissal is not warranted.

## II. SIXTH AMENDMENT CLAIM

[11–13] Defendant Stelly claims that the delay, in addition to violating the seventy day limit of the Speedy Trial Act, also violated his constitutional right to a speedy trial as guaranteed by the sixth amendment, and as implemented by Rule 48(b) of the Federal Rules of Criminal Procedure.[19] The Speedy Trial Act was enacted in part out of dissatisfaction with sixth amendment speedy trial jurisprudence, and to put more life into defendants' speedy trial rights.[20] So, although no provision of the Speedy Trial Act is intended to bar any sixth amendment speedy trial claim, 18 U.S.C. § 3173 (1976); *see United States v. Herman*, 576 F.2d 1139, 1140 n.3 (5th Cir. 1978), it will be an unusual case in which the time limits of the Speedy Trial Act have been met but the sixth amendment right to speedy trial has been violated.

 In *Barker v. Wingo*, 407 U.S. 514, 531–33, 92 S.Ct. 2182, 2192–93, 33 L.Ed.2d 101 (1972), the Supreme Court enunciated the factors to be considered in determining whether the sixth amendment right to a speedy trial has been denied: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of the right; and (4) the prejudice resulting from the delay. *See United States v. Saunders*, 641 F.2d 659, 665 (9th Cir. 1980). Here, the delay between indictment and trial was less than five months. This delay cannot be considered "presumptively prejudicial," so as to even trigger the balancing and require an examination of the other three factors. *Barker v. Wingo*, 407 U.S. at 531, 92 S.Ct. at 2192; *United States v. Rich*,

---

**16.** Speedy Trial Plan, *supra* note 14, § 4(f)(3).

**17.** *See* note 14 *supra*.

**18.** The voir dire of the jury is the beginning of trial and tolls the running of the Act's time limits. *See United States v. New Buffalo Amusement Corp.*, 600 F.2d 368, 376 (2d Cir. 1979); Speedy Trial Plan, *supra* note 14, § 4(e)(3).

**19.** "[I]f there is unnecessary delay in bringing a defendant to trial, the court may dismiss the indictment, information or complaint." Fed.R. Crim.P. 48(b).

**20.** *See United States v. Mehrmanesh*, 652 F.2d 766, 769 (9th Cir. 1980); House Report, *supra* note 4, at 11–12, [1974] U.S.Code Cong. & Ad. News at 7404–05.

589 F.2d 1025 (10th Cir. 1978); *see United States v. Diaz-Alvarado*, 587 F.2d 1002, 1005 (9th Cir. 1978), *cert. denied*, 440 U.S. 927, 99 S.Ct. 1261, 59 L.Ed.2d 482 (1979) (five month delay insufficient in itself to show violation of right). Even if we consider the other factors, the reason for the delay, as discussed in Part I *supra*, was largely the need to preserve continuity of defense counsel. Of this, the portion caused by court congestion is not attributable to the Government for sixth amendment speedy trial analysis, *see United States v. Diaz-Alvarado, supra.* More importantly, Stelly has not alleged any prejudice whatsoever resulting from the delay. *See United States v. Saunders, supra; United States v. Diaz-Alvarado, supra.* We find that neither defendant's right to a speedy trial under the sixth amendment nor implementing Federal Rule of Criminal Procedure 48(b) has been abridged. *Cf. United States v. Pilla*, 550 F.2d 1085 (8th Cir.), *cert. denied*, 432 U.S. 907, 97 S.Ct. 2954, 53 L.Ed.2d 1080 (1977) (violation of implementing Federal Rule of Criminal Procedure 48(b) is addressed to discretion of district court and reversed only for abuse of discretion); *United States v. Dooling*, 406 F.2d 192, 196 (2d Cir.), *cert. denied*, 395 U.S. 911, 89 S.Ct. 1744, 23 L.Ed.2d 224 (1969) (showing of prejudice from delay necessary to invoke Rule 48(b)).

### III. SUFFICIENCY OF THE EVIDENCE

In addition to his speedy trial contentions, Stelly claims that the evidence against him was not sufficient to convict him of the August 31, 1980, theft from interstate shipment in violation of 18 U.S.C. § 659 (1976). Viewing the evidence in the light most favorable to the Government, we find that there was ample evidence to permit a rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *United States v. Spears*, 631 F.2d 114 (9th Cir. 1980).

Accordingly, the convictions are AFFIRMED.