UNITED STATES of America

v.

Henry A. MOLT, Jr., Appellant.

Nos. 80–1234, 80–1235.

United States Court of Appeals,
Third Circuit.

Argued Sept. 16, 1980.
Decided Oct. 9, 1980.

Gilbert B. Abramson, (argued) Philip L. Blackman, Abramson & Freedman, Philadelphia, Pa., for appellant.

James W. Moorman, Asst. Atty. Gen., Peter F. Vaira, U. S. Atty., Thomas E. Mellon, Jr., Asst. U. S. Atty., Philadelphia, Pa., Dirk D. Snel, David C. Shilton (argued), Attys., Dept. of Justice, Washington, D. C., for appellee.

Before ALDISERT, ROSENN and GARTH, Circuit Judges.

PER CURIAM:

The appellant, Henry A. Molt, Jr., appeals a judgment of sentence entered by the United States District Court for the Eastern District of Pennsylvania following a conditional plea of guilty.[1] The two indictments charge violations, first, of the Lacey Act, 18 U.S.C. §§ 43–44 (1976), which prohibits transportation of wildlife in violation of state, national, or foreign laws, sale or receipt of such wildlife, or falsification of records or improper marking of containers pertaining to such wildlife; and second, of an act prohibiting smuggling goods into the United States, 18 U.S.C. § 545 (1976). We affirm.

## I.

Molt has for a number of years owned and operated the Philadelphia Reptile Exchange in Willow Grove, Pennsylvania. He has been a seller, trader, breeder and importer of wildlife, particularly reptiles. As to the trading in reptiles, the bulk of his business has been with zoos across the country. In the course of an extensive investigation of animal smuggling into the United States, Molt's activities came under scrutiny. As a result, the Government sought and obtained seven separate indictments against him in the United States District Court for the Eastern District of Pennsylvania, most of which contained numerous counts.[2] All of the indictments directly in-

1. This court approved the use of conditional pleas of guilty in *United States v. Zudick*, 523 F.2d 848 (3d Cir. 1975) and *United States v. Moskow*, 588 F.2d 882 (3d Cir. 1978). The condition in this case is the right to appeal from the district court's decisions on a motion to suppress and several motions to dismiss the indictments and to withdraw or amend the

guilty plea if any of those decisions is overturned.

2. Most of the indictments were previously the subject of review in this court. In *United States v. Molt*, 589 F.2d 1247 (3d Cir. 1978), we upheld the grant of a motion to suppress certain evidence and subsequently three of the indictments, Crim. Nos. 77–337, 77–338 and

volve the operation of his reptile business and the last two to be resolved, Crim. Nos. 77–336 and 77–341, are the subject of this appeal.

Molt attacked the indictments in the district court with five pretrial motions: (1) a motion to suppress tainted evidence; (2) a motion to dismiss certain counts because trial on those counts placed defendant in double jeopardy; (3) a motion to dismiss certain counts because the Lacey Act is unconstitutionally vague; (4) a motion to dismiss both indictments because the Government failed to comply with the Speedy Trial Act and denied defendant his sixth amendment right to a speedy trial; and (5) a motion to dismiss certain counts because Australian and Philippine customs regulations could not support Lacey Act convictions. The district court ultimately denied each of the pretrial motions. Molt entered a conditional plea of guilty to 16 counts in indictment Crim. No. 77–336 and 15 counts in indictment Crim. No. 77–341. The remaining counts in each of these indictments were dismissed upon motion of the Government.

The district court found the defendant guilty on the two indictments and imposed prison terms aggregating 14 months. The court also sentenced Molt to three years probation following the prison term.

77 340, were dismissed on motion of the Government. Another indictment, Crim. No. 77- 336, was also reviewed by us, *United States v. Molt*, 599 F.2d 1217 (3d Cir. 1979), in which we held that the laws of Papua New Guinea could serve as a basis for an indictment under the Lacey Act, while violation of the laws of Fiji was insufficient basis. Those counts of Crim. No. 77–336 alleging violation of Papua New Guinea law are before us again as part of the instant case. In *United States v. Molt*, 615 F.2d 141 (3d Cir. 1980), we affirmed a smuggling conviction and reversed a conspiracy conviction stemming from indictment Crim. No. 79–44. Finally, in *United States v. Molt*, 624 F.2d 1092 (3d Cir. 1980) (per curiam), arising from indictment Crim. No. 77–339, we reversed a conviction under the Endangered Species Act, 16 U.S.C. §§ 1531–1543 (1976), because the Act failed to give fair notice of the proscribed activity.

## II.

Molt's primary contention on appeal which, with the other contentions raised by him, was briefed and argued orally, is that the district court erred in not dismissing the indictments because the Government failed to comply with the requirements of the Speedy Trial Act, 18 U.S.C. §§ 3161–3174 (1976 & Supp. III 1979). If appellant is correct that the time between indictment and trial exceeded the amount allowed under the Act, and if the Act's sanction provision requiring dismissal was in force when Molt's Speedy Trial Act rights accrued on July 28, 1979,[3] then the trial judge should have dismissed the indictments, either with or without prejudice. 18 U.S.C. § 3162(a)(2) (1976).

Molt was indicted August 4, 1977. He and the Government agree that the Act requires that a person indicted on that date, during the second year of the Act's phasing–in, must be brought to trial within 120 days. *See id.* §§ 3161(g) & 3163(b). The Act, however, provides that certain periods may be excluded when determining whether the allowed time has elapsed. *Id.* § 3161(h). The Government maintains that when all proper exclusions are taken, less than 120 days will be found to have passed between indictment and trial. Molt strenuously disagrees.

3. The Government and Molt stipulated that July 28, 1979 was the date to be used as the date of trial in determining Molt's Speedy Trial Act rights. Those parties and the district court treated that date, July 28, 1979, as the date when Molt made his motion to dismiss the indictments on the grounds that the time allowed to bring a defendant to trial under the Speedy Trial Act had been exceeded and the sanction of dismissal was required. In examining the record, we note that Molt's Speedy Trial Act motion was not sworn to until August 1, 1979, and not actually filed until August 3, 1979, the latter date being one day after the Speedy Trial Act was amended to delay imposition of the mandatory sanction of dismissal, making that sanction effective only in cases beginning after July 1, 1980. 18 U.S.C. § 3163(c) (Supp. III 1979). We shall, however, treat the motion as having been filed July 28, 1979, in keeping with the understanding of the parties and the district court.

Further, the Act, as originally adopted, provided that the mandatory sanction of dismissal should not take effect immediately. The original version of the Act stated only that the sanction requirement "shall become effective" on July 1, 1979. 18 U.S.C. § 3163(c) (1976). Asserting that the sanction was available to defendants indicted before July 1, 1979, whose trials were still pending as of that date, Molt contends that as of July 28, 1979 he had a right under the Act to dismissal of the indictments. On August 2, 1979, Congress amended the Act to delay imposition of sanctions until July 1, 1980. 18 U.S.C. § 3163(c) (Supp. III 1979). In amending the Act, Congress altered the language of the effective date clause, adding to the phrase "shall become effective" the following: "and apply to all cases commenced by arrest or summons, and all informations or indictments filed, on or after July 1, 1980." *Id.* Although the meaning of the amended clause is explicit, the meaning of the original phrase is ambiguous. The Government argues that the original clause limited sanctions to cases in which indictment or arrest occurred only after July 1, 1979. Molt vigorously disputes this construction, maintaining that the sanction provision was applicable to all cases pending as of July 1, 1979.

The district court did not decide whether more than 120 days had elapsed, concluding rather from the legislative history of the Act and its subsequent amendment that the sanctions applied only to cases begun after July 1, 1979. The court on that basis denied Molt's motion on Speedy Trial Act grounds for dismissal of the indictment.

Because the record indicates under the applicable law that the 120 day period allowed was not exceeded, we affirm the denial of the motion on that ground and we do not reach the more difficult problem of construing the language of the pre–amendment sanction provision.[4]

There are two substantial disagreements between Molt and the Government over the exclusion of periods from the total of time elapsed for Speedy Trial Act purposes. The source of these disputes is the complex nature of the case. The different indictments were tried before several judges and two judges made decisions on motions, decisions which the Government and Molt agreed were binding as to all the Molt indictments. Judge Ditter considered a motion to suppress evidence, *United States v. Molt*, 444 F.Supp. 491 (E.D.Pa.1978), *aff'd*, 589 F.2d 1247 (3d Cir. 1978), while Judge Fogel addressed a motion challenging the constitutionality of the Lacey Act, *United States v. Molt*, 452 F.Supp. 1200, *aff'd in part and rev'd in part*, 599 F.2d 1217 (3d Cir. 1979). It is the exclusion of periods when these two judges were considering the motions that is in dispute.

Molt agrees that all of the days on which each of the two judges heard argument on the motions must be excluded, but contends that only one 30 day period may be excluded as the period when a proceeding (the motion) "is actually under advisement." 18 U.S.C. § 3161(h)(1)(G) (1976). The appellant argues that to exclude 30 days for each of the motions would be the same as granting 60 days when a single judge heard both. The Government does not exclude twice those days during which both judges had the motions under advisement, but it does exclude more than 30 days.

Such a narrow construction is not required by the language of the Act, nor is it consistent with the Act's intent. It is unlikely that a complex case like this, with motions affecting the disposition of multiple indictments being heard separately by

4. In numerous cases we have affirmed a decision of a district court on a legal theory different than that applied by it. *Harold Friedman, Inc. v. Thorofare Mkts., Inc.*, 587 F.2d 127 (3d Cir. 1978); *Fairview Park Excavating Co. v. Al Monzo Constr. Co.*, 560 F.2d 1122 (3d Cir. 1977); *Local 103, International Union of Elec., Radio and Mach. Workers v. RCA Corp.*, 516 F.2d 1336 (3d Cir. 1975). In this case, the Government and Molt do not dispute the dates on which the different judges took the various relevant actions. Rather, the only dispute, one amply briefed and orally argued by the parties, is the legal effect under the Speedy Trial Act of those actions. Because the facts are clear, this court can properly make that legal interpretation even if it was not addressed by the trial court.

different judges, was envisioned by the drafters. Although the Act is meant to speed prosecutions, it is not intended to ensnare trial judges. To allow only one exclusion would have that effect, for if only Judge Ditter's advisement period is excluded, then *no time* is allowed Judge Fogel. First, this forces judges to race to decisions. Second, because one judge may not be aware of the action of the other, neither may even know that the time for consideration of the motion has been preempted by the other judge. A single judge hearing two motions is aware of the limits and can plan accordingly. Where two or more judges are hearing separate motions affecting a single case, each should have the same opportunity to bring his schedule into conformity with the Speedy Trial Act. Therefore, we conclude the Government's method, excluding both the period when Judge Ditter had the suppression motion under advisement and the period when Judge Fogel had the motion challenging the Lacey Act under advisement, was proper.

██ Molt's second substantial disagreement with the Government over computation of elapsed time is the Government's exclusion under section 3161(h)(8)(A) of the period of a continuance during which Judge Ditter was considering the suppression motion. On December 15, 1977, Judge Ditter filed a "Report of Speedy Trial" stating that "trial in case cannot commence until 1/15/78 re: Motions Outstanding. The Court finds the ends of the justice served by granting continuance outweigh the best interest of the public and defendant in a speedy trial." Molt argues that Judge Ditter's continuance failed to satisfy the requirements of that section in that the judge did not set forth "in the record of the case," 18 U.S.C. § 3161(h)(8)(A) (1976), his reasons why the ends of justice were served by the continuance. Judge Ditter did set forth reasons, but only in the record of the disposition of the indictments directly before him. Molt claims that because those reasons were not included in the record of the disposition of the indictments before Judge Becker, they were not "in the record of the case" and so the exclusion of the period was improper.

Appellant's contention fails for several reasons. First, the wording of the provision is not so clear as to foreclose the conclusion that the provision was satisfied because the "case" is the same. Judge Ditter's matter involved the same defendant, Molt, and stemmed from the same broad scheme, as are involved in the indictments now before us. Further, Molt and the Government had previously agreed that Judge Ditter's decision was binding as to the issue of suppression on all other trial judges in the district court trying the various Molt indictments. As to the suppression issue, Judge Ditter had the only "case." Second, Molt admits that both the actual days when Judge Ditter heard argument on the motion and the period when the Government appealed his decision were properly excluded. His argument that a continuance granted in adjudication of the same motion cannot be excluded is inconsistent with those exclusions. Third, if the time is not excluded, the ends of judicial economy will not be served. Each judge would have to consider the same issue in order for each to make the time spent in consideration of the motion excludable. Fourth, we believe Congress in drafting this provision could only have required reasons for continuances so that those reasons could be reviewed. This court has those reasons in the record of the prosecution of the indictments before Judge Ditter. If the validity of the merits of the continuance, as opposed to the validity of the technical form, were challenged, those reasons would have been available for review. Thus the intent of the provision is satisfied. Therefore, we conclude that the Government was correct in excluding period of Judge Ditter's continuance.

Because we have rejected Molt's computation of the number of days to be excluded where it conflicts with the computation of the Government, we must also reject his assertion that more than 120 non–excludable days have elapsed between indictment and trial. Accepting the Government's computations, we conclude that the time allowed under the Speedy Trial Act had not

expired and that therefore the district court was correct in denying Molt's Speedy Trial Act motion.

### III.

■ We have also carefully considered each of the remaining contentions urged by the appellant and find them without merit:

(1) That the prosecutor at the sentencing hearing intentionally misrepresented facts concerning the nature of defendant's conduct with respect to the crime to which he pled guilty and made those representations in bad faith and vindictively in an attempt to prevent the defendant from litigating all of the cases and charges against him;

(2) That the Lacey Act is unconstitutionally vague because it makes it a crime to do an act in violation of the laws of any foreign country, and that an ordinary person would have no way of knowing from the Act that a foreign law was of a kind that Congress indicated should not be violated;

(3) That the trial and conviction of the defendant under these indictments violate the double jeopardy clause of the Constitution because the same evidence was utilized to prove the charges against the defendant in Crim. No. 79–44 as were utilized to prove the crimes charged in this case;

(4) That the testimony of Molt's co–defendant should have been suppressed as the fruit of a poisonous tree because Molt's property had been seized in violation of his fourth amendment rights and was used by the Government to cause an otherwise unwilling and uncooperative co–defendant to testify against the defendant, Molt.

Accordingly, the judgment of the district court will be affirmed.