UNITED STATES of America,
Plaintiff-Appellant,
v.
Anthony M. CARLONE, Avie Cohen and
Leonard Bednarz,
Defendants-Appellees.

No. 81–2012.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 11, 1981.

Decided Dec. 23, 1981.

Rehearing Denied Jan. 29, 1982.

Patty Merkamp Stemler, Dept. of Justice, Washington, D. C., for plaintiff-appellant.

Peter Berman, Chicago, Ill., Joseph S. Friedberg, Minneapolis, Minn., for defendants-appellees.

Before CUMMINGS, Chief Judge, and SPRECHER and POSNER, Circuit Judges.

POSNER, Circuit Judge.

This appeal by the government from an order dismissing an indictment raises a question of first impression under the Speedy Trial Act, 18 U.S.C. §§ 3161 *et seq.*, relating to the power of a district judge to vacate a continuance retroactively to the date when he granted it.

The indictment, filed on August 7, 1980, alleged that the defendants had violated a number of federal criminal statutes through a scheme devised and carried out in 1975. They shipped worthless goods from Illinois to Denmark, where the goods were stored in a warehouse owned by the city of Copenhagen. They insured the goods—whose value they overstated—with a Swedish insurance company. They then set fire to the warehouse, destroying the goods, and filed a claim with the insurance company for the inflated value.

Trial was originally scheduled for January 5, 1981. But in December 1980 the government learned that two of its key witnesses, a Swedish woman who had filed the insurance documents claiming damages for the destroyed shipment and a Danish insurance adjuster who had viewed the goods and found them to be worthless, were unwilling to come to the United States to testify—the adjuster because he feared for his life if he came. The government moved for a continuance, which the court granted to January 30. The court directed that the period of the continuance be excluded from the time within which the government had to try the defendants under the Speedy Trial Act. The continuance was subsequently extended to May 11.

The government now set about to get the testimony of the Scandinavian witnesses in some form. However, one of the witnesses was not available to be deposed during the entire month of February, and the lawyer for one of the defendants was unavailable during the whole of January to attend a deposition abroad. Some time was also lost when the government attorney handling the case resigned and was replaced. Hoping to avoid having to take depositions abroad, the government prepared stipulations of the foreign witnesses' testimony, but defense counsel would not agree to the stipulations.

The earliest date for the depositions that would suit everyone turned out to be April 20. But as the government's lawyer began to prepare the letters rogatory that would be necessary to take the depositions, she discovered that the cost to the government could be as much as $40,000. Since this would put a big crimp in the Justice Department's travel budget, she was urged by her superiors to negotiate a plea with one of the defendants in exchange for his cooperation; it was felt that the evidence which a cooperating defendant would give would be an acceptable substitute for the foreign witnesses' testimony. Plea bargaining ensued, but collapsed on April 20. The government's lawyer then set about preparing letters rogatory in earnest. She presented them to the court for its signature some days prior to the May 11 status hearing, but the court objected to the form of the documents and ordered her to redraft them.

On May 11 the defendants renewed their objection to the continuance. The motion was heard on May 22, and at the conclusion of the hearing the court in an oral opinion granted the motion and vacated the continuance all the way back to January 5, the original trial date. Without exclusion of the period during which the continuance had been in effect, no time remained under the Speedy Trial Act to try the defendants, so the court also dismissed the indictment. The court did not indicate whether the dis-

missal was with or without prejudice, but this made no practical difference since the statute of limitations on the offenses charged in the indictment had now run.

The question on this appeal is whether the district judge had the power to vacate the continuance with retroactive effect and, if so, whether he abused that power in the circumstances of this case.

Under 18 U.S.C. § 3161(h)(8)(A), any delay caused by a continuance is excluded in determining the time limits within which a defendant must be tried "if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." Section 3161(h)(8)(B) is a nonexclusive list of factors that the judge is required to consider in deciding whether to grant an excludable continuance. They include whether failure to grant it "would be likely to make a continuation of [the criminal] proceeding impossible, or result in a miscarriage of justice"; whether the case is "so complex . . . that it is unreasonable to expect adequate preparation for . . . the trial" within the time limits specified by the Act; and whether the failure to grant the continuance "would unreasonably deny the defendant or the Government continuity of counsel, or would deny counsel for the defendant or the attorney for the Government the reasonable time necessary for effective preparation, taking into account the exercise of due diligence." However, 18 U.S.C. § 3161(h)(8)(C) provides that no excludable continuance "shall be granted because of . . . lack of diligent preparation or failure to obtain available witnesses on the part of the attorney for the Government."

When the district court granted the government's motion for a continuance in December 1980, it made the findings required by the Act for a continuance that creates excludable delay. But in its May 22 ruling, the court decided that the real reasons for the delay were not valid reasons under the Speedy Trial Act for an excludable continuance. The court stated that one reason for the delay was that the government had been trying to negotiate a plea, which the court said was not a basis for excludable delay. The other reasons that the court thought were invalid grounds for excludable delay were the efforts of the government attorney to save travel expenses, the change of government attorneys, the fact that the government "was having trouble with the bureaucracy in Washington," and the fact that the government "was having trouble with the Court, since I didn't like the format of the Letters Rogatory order and suggested that it be re-drafted. None of these unfortunately, are adequate reasons for excludable time."

▮ The court apparently thought that if the actual causes of the delay in beginning the trial were not valid grounds for the grant of an excludable continuance, it *had* to vacate the continuance retroactively to the original trial date; the Speedy Trial Act, which the court said "takes us out of the real world," left him with no choice. We disagree. There is nothing in the Speedy Trial Act which says that a continuance valid when granted becomes invalid *ab initio* if the reasons for which the continuance was granted turn out not to be the actual causes of the delay that the continuance allows. Contingencies not foreseen when the continuance was asked for and granted may arise that prevent the government from using the continuance for the purposes for which it was granted. If so, the court can refuse to grant further continuances; it can revoke or shorten the continuance; but it is not *required* to revoke the continuance with effect back to the original trial date. We are unwilling to read so inflexible a mandate into the Act.

▮ An alternative reading of the district judge's opinion is that he was revoking the continuance with effect back to the original trial date as a discretionary sanction for the government's misuse of the time allowed it by the continuance. Courts do have broad and flexible powers to prevent the abuse of their processes; but where, as here, the exercise of those powers results in forever precluding the government from trying defendants accused of serious crimes, there is a danger that it is the powers themselves that are being abused. To dismiss an indictment with prejudice, as the court in effect did here, is

to punish not only the prosecutor but the entire law-abiding public. Alternative sanctions are available that do not involve such windfalls for law breakers. They include, as we have already noted, revoking or shortening continuances, with prospective effect only; and refusing to grant further continuances. A judge could (but did not here) expressly condition the grant of a continuance on the government's taking specified actions according to a prescribed timetable. He also has the power to apply sanctions directly to counsel who commit knowing violations of the Speedy Trial Act. *See* 18 U.S.C. § 3162(b). Such sanctions have the attractive characteristic that they do not prevent punishment of criminals as a by-product of trying to prevent misconduct by government officers.

▮ We do not exclude the possibility that in appropriate cases, for example where the government had procured a continuance by deliberate misrepresentation and the delay caused by the continuance was seriously prejudicial to the defendant, the trial court could revoke the continuance retroactively as a sanction for the misconduct and a protection for the defendant. Indeed, in so extreme a case the court would be acting well within the powers expressly granted it by Rule 48(b) of the Federal Rules of Criminal Procedure if it dismissed the indictment without reference to the time limits in the Speedy Trial Act. This was not such a case. There is no suggestion either that the government made deliberate misrepresentations in procuring the continuance or that defendants were in the least bit prejudiced by the delay that the continuance caused. Indeed, it is not even clear that the reasons that the court in its opinion revoking the continuance said were invalid grounds for an excludable continuance really were invalid. The unavailability of an essential witness is an independent ground for tolling the time limits in the Speedy Trial Act. *See* 18 U.S.C. § 3161(h)(3)(A). This ground may well have been available to the government under the facts of this case; and certainly the absence of an essential witness is one of the factors that a trial court is entitled to consider in deciding whether to grant an excludable continuance. While plea bargaining is not an express ground for an excludable continuance, where, as here, it is undertaken for the purpose of obtaining substitute evidence for the testimony of an essential witness who is unavailable, the delay resulting from plea bargaining could properly be considered a delay caused by the unavailability of the witness. Nor was the change of prosecutors a *per se* invalid ground either, as the court seems to have thought; continuity of government counsel is one of the factors that the court is required by 18 U.S.C. § 3161(h)(8)(B) to consider in deciding whether to grant an excludable continuance. So the actual and ostensible causes of delay may in fact have coincided in this case; and if they did not, still the facts do not reveal a pattern of abuse that would justify a trial court in revoking a continuance retroactively with the effect of dismissing the indictment with prejudice.

We therefore reverse; and because we think that relations between the trial court and the prosecutor may have become frayed beyond repair by the events leading up to the court's order, pursuant to Circuit Rule 18 we remand the case to a different judge for further proceedings in the matter.

Reversed and Remanded.